USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: __12/2/2025__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LESLIE RAMIREZ,

                    Plaintiff,

        -against-

EXCLUSIVE MANAGEMENT SOLUTION
GROUP, INC., et al.,

                    Defendants.

24-CV-01786 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

Plaintiff Leslie Ramirez brings this action under the Fair Labor Standards Act ("FLSA")

and New York labor laws ("NYLL").  Defendants are Plaintiff's former employers:  Exclusive

Management Solution Group, Inc. ("EMSG"), Eco. Miss Bubble, Inc. ("Miss Bubble"), 171st &

St. Nicholas Laundromat Inc. ("Laundromat Inc."), and Dmitriy Berezovsky.  Before the Court is

Defendants' motion to dismiss and supplemental motion to dismiss (together, the "Motion")

under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).  For the following reasons, the

Motion is DENIED.

## BACKGROUND

**I.    RELEVANT FACTS[1]**

**A.  The Laundromats and Their Role in Interstate Commerce**

Berezovsky owns EMSG, and EMSG owns 28 laundromats throughout New York City.

FAC ¶ 15; Dkt. No. 19-1.  These laundromats have detergents, fabric softeners, washing

---

[1] The following facts are taken from the first amended complaint (referred to as the "Amended
Complaint" in text and "FAC" in citations).  *See* Dkt. No. 19.  The Court accepts as true all well-pleaded
facts for purposes of resolving the motion to dismiss.  The Court shall refer to the parties' memoranda of
law in support of and opposition to the motion to dismiss as follows: Dkt. No. 13 ("Mot."); Dkt. No. 21
("Supp. Mot.") Dkt. No. 25 ("Opp."); and Dkt. No. 26 ("Reply").

1

machines, and dryers produced and imported from outside New York state. *Id.* ¶ 8. Based on plaintiff's first-hand observation, a given laundromat has at least one hundred customers a day who spend at least $10 but often more during every visit. *Id.*

## B. The Relationship Among the Defendants

Defendants' 28 laundromats include one laundromat at 1225 St. Nicholas Avenue (the "St. Nicholas Avenue Laundromat") and another at 1492 5th Avenue (the "Fifth Avenue Laundromat"). Laundromat Inc. is "located at" at the St. Nicholas Avenue Laundromat. *Id.* ¶¶ 15, 18. Miss Bubble is "located at" and EMSG is headquartered at the Fifth Avenue Laundromat. *Id.* ¶¶ 16–17.

The 28 laundromats are closely related. They provide the same services at the same cost. Dkt. No. 19-2. They share a phone number. Dkt. No. 19-3. Customers may schedule a laundry pick up from any laundromat. All the laundromats are listed and advertised on Miss Bubble's website. Dkt. No. 19-1. The website states the laundromats comprise part of "[t]he most trusted chain in Manhattan" and "[w]herever you are, New York's best laundry service is just a tap away." Dkt. No. 19-1 at 2. Many pages on the website purportedly include text reading: "Copyright @ 2023 EMSG Inc." *See, e.g.*, Dkt. No. 19-2 at 10. Laundromat employees were transferred seamlessly between the laundromats based on company needs. FAC ¶ 13. And the laundromats paid employees using the same payroll system. *Id.*

## C. Plaintiff's Duties and Earnings

Plaintiff worked for Defendants from approximately July 2021 until May 14, 2023. FAC ¶ 23. Plaintiff worked primarily at the St. Nicholas Avenue Laundromat but would also periodically work at the Fifth Avenue Laundromat. *Id.* ¶ 13. Her general duties split 80-20 into two buckets. *Id.* ¶ 25. 80% of her duties involved manual tasks. *Id.* These included "separating clothing, removing tags from clothing, packing up laundry, and assisting customers." *Id.* She

2

performed these manual tasks starting "between 8:00 am and 9:00 am and [ending] anytime between around 3:30 pm and 8:00 pm . . . typically" five days a week. *Id.* ¶ 26. She alleges this set of duties often involved overtime beyond 40 hours a week. *Id.* Crucial to her complaint, Plaintiff contends that she was unable to simply "drop" her task when her shift ended. *Id.* ¶ 27. Often at Berezovsky's direction, she would "daily" remain at work for an additional 30 minutes or more after her shift ended to complete whatever task she had been working on when her shift ended. *Id.* ¶¶ 27–28. She contends that Defendant did not compensate her for the additional time she spent working at the end of every shift. *Id.* ¶ 28. "For example, Defendants recorded Plaintiff as having worked 44 hours for the pay period ending 11/13/22, 47.5 hours for the one ending 11/20/22, and 43.5 hours for the one ending 11/27/22," but those records "understated the actual manual labor performed by Plaintiff" by omitting the additional time she worked every shift. *Id.* ¶¶ 26–27.

The latter 20% of Plaintiff's duties involved "back-office tasks" that Plaintiff performed from home. *Id.* ¶ 25. Plaintiff contends that Defendants never compensated her for the time she spent performing these tasks. *Id.* ¶ 29.

### D. Defendants' Failure to Provide Wage Notices and Wages Statements and the Resulting Injury

Plaintiff alleges that "Defendants knowingly and willfully operated their business with a policy of not providing wage notices to Plaintiff at the beginning of her employment with Defendants." *Id.* ¶ 34. She also alleges that Defendants provided her inaccurate wage statements that did "not reflect the actual number of hours worked." *Id.* ¶ 35. Defendants' actions harmed Plaintiff, she alleges, because it deprived her of "the ability to contest the pay provided by Defendants, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff's rights." *Id.* ¶ 37. Plaintiff contends that the missing wage notices and

inaccurate wage statements "continue[] to result in delayed payment of all proper wages owed to Plaintiff," causing "Plaintiff to struggle to pay bills and other debts." *Id.* ¶ 39. Plaintiff also alleges that understating her hours reduced her wages reported on her W-2, thereby reducing "Plaintiff's entitlement to social security benefits." *Id.* ¶ 44.

### E. Tax Statements

Plaintiff was paid through a combination of checks and cash. *Id.* ¶ 30. For tax purposes, Defendants provided Plaintiff a Form 1099 that Defendants filed with the Internal Revenue Service ("IRS"). *Id.* ¶ 31. Plaintiff alleges that the Form 1099 misrepresented her earnings because it "only included compensation that was paid through checks, not the money paid in cash." *Id.*

## II.   PROCEDURAL HISTORY

Plaintiff commenced this lawsuit on March 8, 2024. Dkt. No. 1. Defendants moved to dismiss the complaint on July 9, 2024. Dkt. No. 12. Plaintiff then filed the First Amended Complaint. Dkt. No. 19.[2] Defendants responded with a supplemental motion to dismiss. Dkt. No. 21.

---

[2] The Court notes factual discrepancies between the original and amended complaint concerning Plaintiff's hours. For example, the original complaint stated, "Plaintiff was scheduled to work Monday through Friday, from 10:00 a.m. to 6:00 p.m. . . . . [but] Plaintiff was regularly required to work past her scheduled shifts until anywhere between 8:00 p.m. [and] 10:00 p.m." Compl. ¶ 25. It also stated that "Plaintiff would work for a total of fifty (50) to sixty (60) hours in a week." *Id.* The First Amended Complaint paints a different picture. It states, "Plaintiff's manual work at the two laundromats typically began between 8:00 am and 9:00 am and ended anytime between around 3:30 pm and 8:00 pm . . . for typically five (5) days a week." FAC ¶ 26. Many courts in this circuit do not consider contradictory facts at the motion to dismiss stage. *Operadora Kau-Kan v. Prodigy Network, LLC*, 20-CV-02770 (ALC), 2021 WL 4482212, at *2 (S.D.N.Y. Sept. 30, 2021). Others will hold a plaintiff to his or her allegations in the first complaint, especially where new allegations are both contradictory and tailored to address an argument in a motion to dismiss. *See id.* at *3; *Kant v. Columbia Univ.*, No. 08-CV-07476 (PGG), 2010 WL 807442, at *7–*8 (S.DN.Y. Mar. 9, 2010) (collecting cases). At this stage, the Court will deem the discrepancies as arising from Plaintiff's good faith corrections as she attempted to craft her First Amended Complaint with more specificity. The First Amended Complaint remains the operative complaint.

## DISCUSSION

Defendants' Motion makes the following arguments:  First, that Plaintiff has not adequately alleged that Defendants engaged in "interstate commerce" necessary to state a claim under the FLSA.  Mot. at 5.  Second, that Plaintiff improperly alleges that Defendants jointly operated the 28 laundromats.  *Id.* at 3.  Third, that Plaintiff has insufficiently alleged that Defendants did not pay her overtime.  *Id.* at 5–6.  Fourth, that Plaintiff lacks standing to bring her wage notice and wage statements claims under the NYLL.  Supp. Mot. at 3–4.  Fifth and last, that Plaintiff has not stated a claim for tax fraud in violation of 27 U.S.C. § 7434.  Supp. Mot. at 1, 4.  Because all of these arguments fail, the Motion is DENIED.

## I.    STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(1), Plaintiff bears the burden of clearly alleging facts demonstrating each element of standing.  *Warth v. Seldin*, 422 U.S. 498, 517–18 (1975).[3]  A plaintiff must make out the standing requirements "with the manner and degree of evidence required at the successive stages of the litigation."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  Relevant to this case, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim."  *Id.*  And "[f]or purposes of ruling on a motion to dismiss for want of standing, [the trial court] must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party."  *Warth*, 422 U.S. at 501.  But the Court "need not

---

[3] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes and omissions, and adopt alterations.

credit a complaint's conclusory statements without reference to its factual context." *Connecticut Parents Union v. Russell-Tucker*, 8 F.4th 167, 172 (2d Cir. 2021).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. The Court must assume all well-pled facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012); *see also A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir. 1993) ("[A]ll allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party."). However, the Court need not accept conclusory assertions. *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 321 (2d Cir. 2021).

Finally, on a Rule 12 (b)(6) motion, a court "may review only a narrow universe of materials." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). That universe includes "the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021). For motions brought pursuant to Rule 12(b)(1), "a district court may refer to evidence outside the pleading," but is only required to do so "where jurisdictional facts are placed in dispute." *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 441 (2d Cir. 2022).

II.    **PLAINTIFF ADEQUATELY ALLEGES INTERSTATE COMMERCE**

An FLSA claim requires a defendant who (1) employed a plaintiff and (2) engages in interstate commerce. *Bai v. Sunwoo Trade Inc.*, No. 20-CV-09588, 2022 WL 4357867, at \*5 (S.D.N.Y. Sept. 2020 2022). Defendants do not dispute that the first requirement is met but argue that Plaintiff did not adequately allege "interstate commerce." Mot. at 5.

Two things must be true for an enterprise defendant to be engaged in interstate commerce. First, it must have employees who "engaged in commerce or in the production of goods for commerce" or who "handl[e], sell[], or otherwise work[] on goods or materials that have been moved in or produced for commerce by any person." 29 U.S.C. § 203(s)(1)(A)(i). Second, the defendant must have an annual gross volume of sales or business at or exceeding $500,000. 29 U.S.C. § 203(s)(1)(A)(ii).

The first requirement is met because Plaintiff alleges that Defendants' laundromats use detergents, dryer sheets, washing machines, and dryers manufactured out of state. FAC ¶ 8. Accordingly, Defendants have employees who handle and work on goods or materials that have moved in interstate commerce. *Pinheiro v. Interior Mogul LLC*, No. 22-CV-09856(JHR) (RWL), 2024 WL 4716346, at \*3 (S.D.N.Y. Aug. 28, 2024), *report and recommendation adopted*, No. 22-CV-09856 (JHR) (RWL), 2025 WL 3054389 (S.D.N.Y. Oct. 31, 2025).

Plaintiff meets the monetary requirement, as well. Plaintiff worked at two of Defendants' laundromats: The St. Nicholas Avenue Laundromat and the Fifth Avenue Laundromat. Based on her observations, she alleges that a given laundromat had around 100 customers in a day and each customer would spend at least $10 but often more. FAC ¶ 8. Drawing all inferences in Plaintiff's favor, Plaintiff's observations suffice to show that a given laundromat had over $500,000 in business. Furthermore, the Court determines (for reasons discussed below) that

Defendants' 28 laundromats operated as one enterprise. Accordingly, Plaintiff has met the monetary requirement for the separate reason that her allegations show that the aggregated revenue of the 28 laundromats far exceeded $500,000. *Keawsri v. Ramen-Ya Inc.*, No. 17-CV-02406, 2022 WL 3152572, at *3 (S.D.N.Y. Aug. 8, 2022) (stating that if defendants operate as a single enterprise, then courts aggregate their revenue under the FLSA).

### III.   PLAINTIFF HAS ADEQUATELY PLEADED DEFENDANTS ARE A "SINGLE INTEGRATED ENTERPRISE"

Plaintiff alleged that Defendants operated as a single enterprise that jointly owned and operated the 28 laundromats. FAC ¶ 15. Defendants argued Plaintiff's allegations are insufficient and do not establish that any Defendant owns a laundromat where Plaintiff worked. Supp. Mot. at 2, 4. The Court disagrees.

The FLSA permits multiple entities to be deemed one employer, and hence jointly liable, if they are a "single integrated enterprise." *Arcuelo v. On-Site Sales & Marketing, LLC*, 425 F.3d 193, 198 (2d Cir. 2005). "The single employer doctrine provides that, in appropriate circumstances, an employee, who is technically employed on the books of one entity, which is deemed to be part of a larger single-employer entity, may impose liability for certain violations of employment law not only on the nominal employer but also on another entity comprising part of the single integrated employer." *Griffin v. Sirva, Inc.*, 835 F.3d 283, 292 (2d Cir. 2016). A court determines whether multiple entities are a single integrated enterprise by looking to four factors: "(1) [I]nterrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Juarez v. 449 Rest., Inc.*, 29 F. Supp. 3d 363, 367 (S.D.N.Y. 2014). Relevant facts can include sharing employees, paying employees via the same system, advertisements on the same website, shared styles or aesthetics,

or other facts indicating shared operation. *See Bravo v. Established Burger One, LLC*, No. 12-CV-09044 (CM). 2013 WL 5549495, at *8 (S.D.N.Y. Oct. 8, 2013)

Plaintiff has adequately alleged that Defendants and all 28 laundromats comprise a "single integrated enterprise." Her allegations show that all 28 laundromats are affiliated and jointly operated. All 28 laundromat offer identical services for identical prices. They are jointly advertised on the same website. Dkt. No. 19-2. That website describes the laundromats as comprising one "chain". Dkt. No. 19-1. Defendants pay the employees of the laundromats through the same payment system. FAC ¶ 13. And employees are shared among laundromats. *Id.* Furthermore, Plaintiff adequately alleges a connection between the laundromats and each Defendant. Laundromat Inc. is located at the St. Nicholas Avenue Laundromat. *Id.* ¶¶ 15, 18. The laundromats are all affiliated with Miss Bubble, which seemingly operates the website. The laundromats (and Miss Bubble) are affiliated with ESMG because the website bears a trademark with "ESMG Inc" on numerous pages. Dkt. No. 19-2 at 10. Berezovsky owns EMSG. FAC ¶ 15. These well-pleaded allegations more than satisfy the Court that Defendants comprise a "single integrated enterprise" at this stage of the litigation.

## IV.    PLAINTIFF STATES A CLAIM UNDER FLSA

Plaintiff alleges that Defendants did not pay her all the overtime wages she was due. Defendants argue that Plaintiff fails to state a claim for non-payment of overtime. This argument, too, fails.

FLSA and NYLL mandate that—once a non-exempt employee works 40 hours in a week—the employee receives time-and-a-half pay for every subsequent hour worked. 29 U.S.C. § 207(a)(1). "To state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of" 40 hours.

*Lundy v. Catholic Health System of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013).  Blanket statements that an employee worked more than 40 hours without overtime pay fail to meet this standard.  But a plaintiff need not provide "careful records" or "plead their hours with mathematical precision," either.  *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 90 (2d Cir. 2013).  Instead, a plaintiff must "provide some factual context that will 'nudge' [her] claim 'from conceivable to plausible.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570).

Plaintiff meets that requirement.  She contends that her manual tasks regularly involved overtime.  And she alleges that, once her shift ended, she would "daily" be required to work an additional 30 minutes while wrapping up her tasks.  FAC ¶ 28.  Plaintiff specifically cites three pay periods where she worked over 40 hours and did not receive overtime compensation for the additional 30 minutes of work she performed each day.  *Id.* ¶ 26.  In addition, Plaintiff alleges that she regularly performed clerical or administrative tasks at home, in addition to her full-time in-person hours, for which she was not compensated.  *Id.* ¶ 29.  At the motion to dismiss stage, those allegations provide sufficient factual context to show that Plaintiff worked over 40 hours in some weeks and did not receive all the overtime she was due.

Defendants' arguments to the contrary are unavailing.  Defendants highlight cases dismissing FLSA overtime cases where a plaintiff did not allege any workweek in which the employee worked more than 40 hours.  *See* Mot. at 10–12.  Those cases do not apply because, here, Plaintiff has cited three specific workweeks where she worked more than 40 hours.  Defendants also argue that Plaintiff's wage statements show that she received overtime.  Supp.

Mot. at 4. This argument does nothing to rebut Plaintiff's allegation that she did not receive overtime for the 30 minutes she spent every day wrapping up her tasks.[4]

## V. PLAINTIFF ADEQUATELY PLEADS STANDING FOR HER WAGE NOTICE AND WAGE STATEMENTS CLAIMS[5]

New York law requires an employer to provide an employee a wage notice at the time of hiring and a wage statement with every payment of wages. NYLL §§ 195(1)(a), (3). Plaintiff alleges Defendants did not provide her a wage notice when they hired her. FAC ¶ 34. And she alleges that her wage statements were inaccurate because Defendants were not fully compensating Plaintiff for the hours she worked. *Id.* ¶ 35. Defendants respond that Plaintiff lacks a concrete injury and hence lacks standing to bring her NYLL claims. Mot. at 13; Supp. Mot. at 5. The Court rejects this argument.

A plaintiff must show an injury in fact to establish Article III standing. *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 338 (2016). A mere allegation that a defendant has violated the law does not constitute an injury. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021). In *Guthrie v. Rainbow Fencing Inc.*, the Second Circuit explained that, to pursue a claim under §195 of the NYLL, a plaintiff must allege actual and specific injuries flowing from a wage notice and wage statements violations. 113 F.4th 300, 305 (2d Cir. 2024).

Plaintiff alleges at least three injuries flowing from Defendants' wage notice and wage statements violations. First, she argues the violations deprived her "the ability to contest the pay provided by Defendants, allowed Defendants to hide their wrong-doing, and necessitated the

---

[4] Defendants argued that the Court lacks supplemental jurisdiction over Plaintiff's NYLL claims because Plaintiff failed to a state a claim under federal law. Supp. Mot. at 1–2. The Court rejects that argument given the foregoing.

[5] Defendants do not move to dismiss Plaintiff's wage notice and wage statements claims for failure to state a claim. The Court takes no position on whether Plaintiff has stated a claim regarding her claims under NYLL §§ 195(1)(a), (3).

current litigation to vindicate Plaintiff's rights." *Id.* ¶ 37.  Second, she alleges they "continue[] to result in delayed payment of all proper wages owed to Plaintiff," causing "Plaintiff to struggle to pay bills and other debts." *Id.* ¶ 39.  And, third, she alleges that misrepresenting her wages reduced on the amounts on her W-2, thus reducing her eventual social security benefits. *Id.* ¶¶ 41–42.  Numerous courts in this district have found Article III standing on similar facts. *See Francisco v. Exclusive Mgmt. Grp. Inc.*, 24-CV-03928 (AT) (RWL), 2025 WL 1982943, at *11 (S.D.N.Y. July 7, 2025) (collecting cases), *adopted by* 2025 WL 2106678 (S.D.N.Y. July 28, 2025).  The Court sees no reason to part ways with those courts in this matter.

Defendants' opposing argument consists primarily of a block quote from *Chen v. Lilis 200 W. 57th Corp.*  Mot. at 13 (quoting *Chen v. Lilis 200 W. 57th Corp.*, No. 19-CV-07654, 2023 WL 2388728, at *6–8 (S.D.N.Y. July 11, 2022)).  *Chen* is distinguishable because, here, Plaintiff alleges the delayed payments caused her to struggle to pay bills and debts.  FAC ¶ 39.  Defendants also state the injury is hypothetical.  This Court—and many others in this circuit— disagree. *See Francisco*, 2025 WL 1982943 at *11.  Defendants aver that Plaintiff received weekly earnings statements and signed them.  But this statement does not refute Plaintiff's argument that the wage statements did not accurately reflect the number of hours she worked. *See* FAC ¶ 35.  Defendants also argue that Plaintiff never received W-2s because she does not have a Social Security number.  Mot. at 2.  The Court can look to evidence outside the record in assessing a jurisdictional fact. *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 441 (2d Cir. 2022).  Nevertheless, Defendants have not proffered adequate evidence proving that Plaintiff lacks a social security number.  Regardless, Plaintiff's first two theories of injury suffice on their own to establish standing.

## VI.    PLAINTIFF HAS STATED A CLAIM UNDER 27 U.S.C. § 7434

Plaintiff alleges that Defendants violated 27 U.S.C. § 7434 by misrepresenting the hours she worked on the Form 1099 Defendants issued Plaintiff.[6]  Section 7434 "provides a private right of action for an individual who was the subject of a falsely filed information return, allowing her to bring a civil action for damages against any person who willfully files a fraudulent information return with respect to payments purported to be made to the individual." *Rosario v. Fresh Smoothies LLC*, No. 20-CV-05831, 2021 WL 5847633, at *6 (S.D.N.Y. Dec. 9, 2021).  A plaintiff states a Section 7434 claim by alleging facts supporting that a defendant willfully issued a fraudulent return. *Munn v. APF Mgmt. Co.*, No. 19-CV-10791, 2020 WL 7264471, at *4 (S.D.N.Y. Dec. 10, 2020).  Willfulness under § 7434 means a "voluntary, intentional violation of a legal duty." *Rosario*, 2021 WL 5847633, at *6.

Plaintiff alleges that Defendants paid her by check and by cash.  FAC ¶ 30.  Defendants issued her a Form 1099 and filed the form with the IRS.  But Plaintiff contends the Form 1099 misrepresented Plaintiff's earnings by omitting the money she earned in cash. *Id.* ¶ 31.  These allegations suffice to state a claim under Section 7434.  Form 1099 is a "return."  Moreover, as alleged, Defendants knew that Plaintiff received wage payments by both cash and check.  Accordingly, Defendants would know that a Form 1099 only reporting Plaintiff's check payments would be fraudulent. *Accord Rosario*, 2021 WL 5847633, at *6.

Defendants argued in their original motion that Plaintiff did not "allege that the Form 1099 failed to report all her compensation, by check and cash," Mot. at 7–8, but the Amended Complaint clearly makes this allegation.  FAC ¶ 31.  Defendants also argue that Plaintiff is

---

[6] This claim debuted in Plaintiff's First Amended Complaint.  Once again, it does not contradict her original complaint.

responsible for paying taxes. Supp. Mot. at 1. Whatever the truth of that statement, it is irrelevant to whether tax forms filed by Defendants were fraudulent or inaccurate. Lastly, Defendants state that Plaintiff received a Form 1099 that listed all "her compensation, both by check and cash," which the Court disregards because it must accept as true all facts in the Amended Complaint. Supp. Mot. at 1.

## CONCLUSION

For the foregoing reasons, the motion to dismiss is DENIED.


Dated: December 2, 2025
       New York, New York


                                        SO ORDERED.

                                        _____
                                        MARGARET M. GARNETT
                                        United States District Judge